UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

UNITED STATES OF AMERICA,

v.                                                         5:09-CR-0106
                                                           (GTS)
DESMOND KERR,

                              Defendants.
_____

APPEARANCES:                                   OF COUNSEL:

HON. ANDREW T. BAXTER                          RANSOM P. REYONLDS, III,
                                               ESQ.
  United States Attorney for the N.D.N.Y.
  Counsel for the Government
James Hanley U.S. Courthouse
100 South Clinton Street
Syracuse, NY 13261-7198

LAW OFFICE OF JEFFREY DeROBERTS               JEFFREY DeROBERTS, ESQ.
  Counsel for Defendant Kerr
333 East Onondaga Street, 3rd Floor
Syracuse, NY 13202

HON. GLENN T. SUDDABY, United States District Judge

**DECISION and ORDER**

Currently before the Court in this criminal proceeding against Desmond Kerr

("Defendant") for possession with intent to distribute 3,4 methylenedioxymethamphetamine

("MDMA"), a Schedule I controlled substance, in the form of tablets represented to be "ecstasy,"

in violation of Title 21, United States Code, Sections 841(a)(1) and (b)(1)(C), are two pretrial

motions filed by Defendant (Dkts 26 and 29).  The Government has opposed Defendant's

motions.  For the reasons set forth below, Defendant's motions are denied.

I.      **RELEVANT BACKGROUND**

Defendant Kerr has filed the following two motions: (1) a motion to suppress statements made by him after he was arrested, pursuant to Fed. R. Crim. P. 12(b)(3) and 41 (Dkt 26); and (2) a motion to dismiss the indictment, pursuant to Fed. R. Crim. P. 12(b) (Dkt 29).

II.     **DISCUSSION OF DEFENDANT'S MOTION TO SUPPRESS STATEMENTS**

A.      **Governing Legal Standard**

As indicated above in Part I of this Decision and Order, Defendant Kerr has requested that the Court suppress statements made by him after he was arrested, pursuant to Fed. R. Crim. P. 12(b)(3) and 41.  More specifically, Defendant Kerr argues that statements that he made after he was arrested, while he was being transported from the Port of Entry in Alexandria Bay, New York to the Onondaga County Jail in Syracuse, New York, should be suppressed because "[t]he long hours between his detention [at Alexandria Bay] and his being lodged in the Onondaga County Jail overbore his will to remain silent."  (Dkt. No. 26, Part 2.)  The Government has opposed this motion.

When an individual is in custody, that individual is entitled to a reading of his *Miranda* rights.  In addition, in *Miranda v. Arizona*, 384 U.S. 436 (1966), the Supreme Court held that, after an individual is Mirandized, "[i]f [an] interrogation continues without the presence of an attorney and a statement is taken, a heavy burden rests on the government to demonstrate that the defendant knowingly and intelligently waived his privilege against self-incrimination and his right to retained or appointed counsel."  *Miranda*, at 475.  The Court further held that "[a]n express statement that the individual is willing to make a statement and does not want an attorney followed closely by a statement could constitute a waiver."  *Id*.  However, "a valid

2

waiver will not be presumed simply from the silence of the accused after warnings are given or simply from the fact that a confession was in fact eventually obtained." *Id*.

"Although the Court held that an express statement can constitute a waiver, and that silence alone cannot, the 'court did not hold that such an express statement is indispensable to a finding of waiver.'" *U.S. v. Copeland*, 830 F. Supp. 216, 218 (S.D.N.Y. 1993) (quoting *North Carolina v. Butler*, 441 U.S. 369, 372 [1979]).  "An express written or oral statement of waiver of the right to remain silent or right to counsel is not inevitably either necessary or sufficient to establish waiver." *Copeland*, 830 F. Supp. at 218 (citation omitted).  "The question is not one of form, but rather whether the defendant in fact knowingly and voluntarily waived the rights delineated in the *Miranda* case." *Id*. (citations omitted).

"Statements may be voluntary if[, after being read his *Miranda* rights,] the accused initiates further communications, exchanges, or conversations with the questioners." *Id*. at 218-19 (citing *Edwards v. Arizona*, 451 U.S. 477, 485 [1981]) (other citation omitted).  In addition, "[w]here a suspect affirmatively volunteers statements, and is in control of choices made, there is no compulsion as that term is used in the Fifth Amendment, nor are the objectives of the Amendment or its implementation through *Miranda* offended." *Id*. at 219 (citations omitted)

## B.    Relevant Facts

Because  this Decision and Order is issued primarily for review of the parties, and because the parties have demonstrated (in their briefs) an accurate understanding of the relevant facts (which were also discussed at the Pretrial Conference on October 21, 2009 and the Suppression Hearing on October 27, 2009), the Court will not provide a description of the relevant facts, but will assume the parties' familiarity with them.  As a result, the Court will refer to the facts in its analysis of Defendants' motions only when necessary.

###### C.     Analysis

As an initial matter, the Court finds, based on the credible testimony from the hearing held on October 27, 2009, that Defendant Kerr was properly advised of his rights under *Miranda* when he was formally arrested at approximately 11:20 a.m. on February 14, 2009.  In addition, the Court finds, based on the credible testimony by Agent Jason Egerbrecht at the hearing, that Defendant Kerr knowingly, voluntarily, and intelligently waived his *Miranda* rights when he initiated a conversation with Agent Egerbrecht, Agent Sean Boutot, and Agent Mike Ball, while these three agents were transporting Defendant to the Onondaga County Jail, stating, among other things, that "he screwed up," that "somebody paid him [to transport the MDMA across the Border]," and inquiring as to how much was found.  (Hearing Tr. at 41.)

As in *Copeland*, the credible testimony of Agent Egerbrecht reveals that Defendant Kerr spoke while he was in route to the Onondaga County Jail, not at the urging of the three Agents, "but on his own volition in order to attempt to limit his liability in the crime[] of which he was accused."  *Copeland*, 830 F. Supp. at 219.  In sum, the record evidence is clear that this conversation was initiated not because of coercive actions by the Agents but by the accused for his own reasons.

As a result, the Court denies Defendant Kerr's motion to suppress the statements made by him after he was Mirandized.

### III.     DISCUSSION OF DEFENDANT'S MOTION TO DISMISS THE INDICTMENT

Defendant Kerr has also filed a motion to dismiss the indictment pursuant to Fed. R. Crim. P. 12(b) based on the Government's alleged "bad faith destruction of material evidence." In his motion, he argues that (1) the Government failed to preserve all of the MDMA that it seized from Defendant Kerr's vehicle on February 14, 2009, (2) the Government failed to preserve a video that captured (a) Defendant crossing the border, (b) the MDMA found in

Defendant's vehicle, and (c) the bag in which the MDMA was found, and (3) if the Government

does not provide Defendant with this material evidence prior to trial, Defendant will be deprived

of his due process rights.  (Dkt. No. 29, Part 1.)  The Government has opposed the motion.

For the sake of brevity, the Court will not recite the well-known legal standard governing

dismissals of an indictment as a result of the destruction of evidence, but will simply refer the

parties to the legal standard recited by the Government in its response in opposition to

Defendant's motion to dismiss the indictment.  The Court will only add that, under well-

established Supreme Court precedents, "the applicability of the bad-faith requirement in

[*Arizona v.*] *Youngblood* depend[s] not on the centrality of the contested evidence to the

prosecution's case or the defendant's defense, but on the distinction between 'material

exculpatory' evidence and 'potentially useful' evidence."  *Illinois v. Fisher*, 540 U.S. 544, 549

(2004) (citing *Arizona v. Youngblood*, 488 U.S. 51, at 57-58 [1988]).  When destroyed evidence

is only "potentially useful" evidence, "*Youngblood*'s bad-faith requirement applies."  *Fisher*, 540

U.S. at 549.

Given that two thousand (2,000) MDMA tablets have not been destroyed, the destroyed

MDMA tablets constitute, at best, "potentially useful" evidence.[1]  Moreover, because the

---

[1]    The Court notes that, whether Defendant Kerr had been found to be in possession of 2,000 MDMA tablets or 6,917 MDMA tablets, Defendant Kerr would be in violation of Title 21, United States Code, Sections 841(a)(1) and (b)(1)(C).  The Court notes also that, with regard to the video evidence, even assuming that it was destroyed, because (a) Defendant has not alleged that the video evidence was exculpatory in nature, and (b) the record evidence establishes that Border Patrol Agents removed MDMA tablets from Defendant's vehicle, the destruction of the video evidence does not violate Defendant's due process rights.  *United States v. Rastelli*, 870 F.2d 822, 833 (2d Cir. 1989) (affirming district court's holding that no due process violation occurred where "neither the missing tapes nor the bid documents contained exculpatory evidence that was apparent before they were lost"), *cert. denied*, 493 U.S. 982, 110 S.Ct. 515, 107 L.Ed.2d 516 (1989); *California v. Trombetta*, 467 U.S. 479, 489 (1984) (holding that, to succeed on a claim that missing evidence would play a significant role in a defendant's defense and was thus "material," the "evidence must both possess an exculpatory value that was apparent before the evidence was destroyed, and be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means").

Government allowed Defendant's former attorney (First Assistant Federal Public Defender Lisa Peebles) to view the tablets before they were destroyed (Tr. at 4), and because it is the Government's policy that only 2,000 MDMA tablets need be kept for prosecution "in a case that involves over 5,000 pills seized" (*id*.), there is no record evidence that even remotely suggests that the Government acted in bad faith in destroying 4,917 of the MDMA tablets seized from Defendant's possession.  For all of these reasons, the Court denies Defendant's motion to dismiss the indictment.

The Court would add only that, in the event that the Government intends to prove that Defendant Kerr was found to be in possession of an amount of MDMA tablets beyond the 2,000 tablets that the Government has not destroyed, the Government retains the burden at trial of demonstrating the existence of these destroyed tablets.  In the event that the proof put on at trial fails to demonstrate the existence of an amount of MDMA tablets beyond the 2,000 tablets that the Government has not destroyed, the Court may, based on the trial proof, consider issuing an adverse instruction regarding the destroyed tablets.

**ACCORDINGLY**, it is

**ORDERED** that Defendant Kerr's motion to suppress statements that he made after he was Mirandized (Dkt 26) is **DENIED**; and it is further

**ORDERED** that Defendant Kerr's motion to dismiss the indictment (Dkt 29) is

**DENIED**.

Dated: November 25, 2009
      Syracuse, New York

Hon. Glenn T. Suddaby
U.S. District Judge